UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RHONDA GRESKY,** | ) | |
| | ) | |
| On behalf of herself and those similarly situated, | ) | Case No.: 3:21-cv-01203 |
| | ) | |
| | ) | Judge Jeffrey Helmick |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **CHECKER NOTIONS COMPANY, INC., D/B/A CHECKER DISTRIBUTORS** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF A CLASS ACTION**

---

Named Plaintiff Rhonda Gresky ("Gresky," "Named Plaintiff," or "Representative Plaintiff"), on behalf of herself and those similarly situated, and Defendant Checker Notions Company, Inc. d/b/a Checker Distributors ("Defendant"), by and through undersigned counsel, hereby jointly move the Court for entry of an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) preliminarily certifying Named Plaintiff's claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code §§ 4111.01, *et seq*., 4111.08; and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (OMFWSA and the OPPA will be referred to collectively as "the Ohio Acts"), as a settlement class under Fed. R. Civ. P. 23; (3) appointing Plaintiff's counsel as class counsel pursuant to Fed. R.

Page **1** of **46**

Civ. P. 23(g); (4) appointing Analytics Consulting, LLC as the claims administrator ("Claims Administrator"); (5) approving the form, content, and manner of notice to the proposed settlement class; and (6) scheduling a final approval hearing.

As explained in the accompanying memorandum, the Parties have reached a settlement in which Defendant will make payments to current and/or former employees. The Parties also jointly request that the Court preliminarily certify a Fed. R. Civ. P. 23 class consisting of all class members solely for purposes of settlement. To that end, the Parties agree that the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a) are satisfied and that the class claims meet the requirements of Fed. R. Civ. P. 23(b)(3). The Parties further agree that Plaintiff's counsel should be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g) and that Analytics Consulting, LLC should be appointed as the Claims Administrator for purposes of administering the settlement. Finally, the Parties agree that the proposed form, content, and manner of notice to the settlement classes is reasonably calculated to give adequate notice of the settlement and an opportunity to object to it or opt out of it.

WHEREFORE, for the reasons set forth above and in the memorandum of law in support of this motion, the Parties jointly request that the Court enter an order:

1. Approving the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b);

2. Preliminarily approving the settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

2. Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined by the Parties in the accompanying memorandum;

3. Appointing Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of

Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g);

4.       Appointing Analytics Consulting, LLC as the Claims Administrator for purposes

of administering the settlement;

5.       Approving the form, content, and manner of the notices to the proposed settlement

classes; and

6.       Setting a final approval hearing on a schedule consistent with the Parties' settlement

agreement and the Court's calendar.

Respectfully submitted,

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road
Suite W-126
Columbus, Ohio 43220
Direct: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

/s/Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Road
Suite W-126
Columbus, Ohio 43220
Ph: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*Attorneys for Named Plaintiff*
*and those similarly situated*

/s/ Roman Arce
Roman Arce (0059887)
**MARSHALL & MELHORN, LLC**
Four SeaGate, Eighth Floor
Toledo, Ohio 43604
Telephone:  (419) 249-7100
Facsimile: (419) 249-7151
arce@marshall-melhorn.com

*Attorneys for Defendant*

<u>**MEMORANDUM IN SUPPORT**</u>

<u>**INTRODUCTION**</u>

Following significant discovery and data analysis, the record reflects that Named Plaintiff and Defendant engaged in arms-length settlement negotiations to resolve class action and collective action claims arising from the alleged underpayment of overtime wages. Following prolonged settlement negotiations, the Parties reached a settlement of all claims that Named Plaintiff brought against Defendant on behalf of themselves and all similarly-situated persons pursuant to Rule 23 of the Federal Rules of Civil Procedure, the FLSA, and Ohio law. The Parties respectfully submit that the settlement, memorialized in the Settlement Agreement and Release ("Agreement" or "Settlement") and attached as Exhibit 1, is fair, reasonable, and adequate. As set forth herein, the Parties respectfully request that the Court preliminarily certify the class, maintain certification of the collective action, and preliminarily approve the Settlement in all respects.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

I.     **Named Plaintiff's Allegations and Defendant's Response**

On June 17, 2021, Named Plaintiff filed her Collective and Class Action Complaint for Violations of the FLSA and the Ohio Acts. (ECF No. 1). In the Complaint, Named Plaintiff alleges that she and other similarly-situated hourly employees regularly worked more than 40 hours per workweek, but were not paid all overtime wages owed under the FLSA and applicable Ohio Acts. (*Id*., at PageID # 4) She maintains that, in addition to the base hourly wage, Defendant paid her and over one hundred (100) other hourly employees production bonuses ("Additional Remuneration") as incentive to encourage her and others to work more steadily, rapidly, efficiently, and/or to encourage its workers to remain with the company given its importance to the overall operation of Defendant's business. (*Id*. at PageID # 4-6) As such, Named Plaintiff

alleges that the Additional Remuneration was non-discretionary and should have been included in the regular rate of pay for those who worked over 40 hours and received Additional Remuneration in one or more workweeks. (*Id.*) During workweeks when Named Plaintiff and similarly situated others worked overtime and received Additional Remuneration, they allege they are owed unpaid overtime compensation and other compensation as a result of the failure to include the Additional Remuneration into the regular rate of pay for purpose of calculating their correct overtime rate. (*Id.*)

While Defendant admits that it pays Additional Remuneration, Defendant denies Named Plaintiff's allegations, denies that it willfully violated the FLSA, states that it complied with the FLSA and applicable state laws at all times in good faith, and that it had reasonable grounds to believe that its act or omission did not violate the FLSA or applicable Ohio law. (ECF No. 5, at PageID # 30-31) Defendant also denies that Plaintiff's claims were amendable to class action certification or collective action certification. (*Id.*) It also raised several affirmative defenses. (*Id.* at PageID # 35-37)

## II.  Procedural Background Following Defendant's Response to Plaintiff's Complaint

Based on Named Plaintiffs' allegations set forth above, the Parties stipulated to conditional certification (ECF No. 10) and the Court conditionally certified the Lawsuit as a Collective Action Pursuant to 29 U.S.C. § 216(b) on September 29, 2021. (ECF No. 11) The Parties also stayed the case deadlines, including issuing notice to potential FLSA Collective Members, pending a due diligence exchange of relevant payroll and time records so that the Parties could thoroughly engage in settlement communication. (ECF No. 12)

In advance of making their demand, Named Plaintiff obtained a damages analysis from her expert, who analyzed the time and payroll records of Named Plaintiff and all of the one hundred

and twenty (120) putative Rule 23 class members. On November 29, 2021, Named Plaintiff served Defendant with her demand. Defendant sent their response to Named Plaintiff's demand on December 7, 2021. Over the course of the following months, the Parties discussed the strengths and weaknesses of their positions, alleged damages, and traded counterdemands and counteroffers. On February 14, 2022, the Parties reached an agreement on the terms of a resolution of this matter. (*See* Exhibit 1, p. 12)

### III.     The Settlement Agreement

The Parties agree and submit that the terms and conditions of the settlement are fair, reasonable, and are in the best interest of the Parties and the Class. (*See* Ex. 1, Settlement Agreement, ¶ 15) The Parties have entered into the Agreement because it reflects a reasonable compromise of their disputed issues and any actual or potential claims. (*Id*.) If approved, the Agreement will provide Named Plaintiffs, putative Opt-In Plaintiffs, and the Class with significant monetary consideration without the risk that they will recover nothing in this action or that any verdict will be overturned on motion or appeal by Defendant. (*Id*., ¶ 2) In particular, and as described more fully below and in the Agreement and in the proposed notice to the putative Rule 23 class members, the settlement will compensate all Class Members for the damages Named Plaintiff alleges incurred for alleged overtime work they performed without full compensation for the period of June 17, 2019 until July 11, 2021 ("Calculation Period"). (*Id*., ¶ 2, and p. 17) This guaranteed compensation is especially significant considering Defendant's potential defenses, whether it acted in good faith, and the potential that the Court could ultimately deny class certification in this matter. (*Id*., ¶ 15) The Parties respectfully submit that the terms of the Settlement provide substantial relief to the Class Members similar to what they might expect to

receive at trial, but without the risk, time, and expense associated with such a trial. (*Id*.; *see also* p. 17)

Specifically, the Settlement Amount is $96,377.58, which includes all alleged unpaid overtime compensation to Named Plaintiff, any Opt-In, and the Class Members. (Exhibit 1, Agreement, ¶ 2) In addition to the monetary relief for the Class Members, the Agreement provides that Defendant will also pay an incentive payment of $5,000 to the Named Plaintiff, pay Plaintiff's counsel's attorneys' fees (in the form of their lodestar), which are capped at $37,500, and $1,952 in costs associated with prosecuting this matter to Plaintiff's Counsel. (*Id*., ¶ 3-4) Defendant has agreed to pay the costs associated with administering the settlement to the Claim Administrator in the amount of $6,105.00. (*Id*., ¶ 4) The Parties selected Analytics Consulting, LLC as the Claims Administrator to administer the settlement. (*Id*. ¶ 10)

As outlined in the Agreement, the potential Class Members include any individual who within the two-year period prior to the filing of the Complaint up through and including July 11, 2021 when Defendant implemented a change in pay practice (that is, going back to June 17, 2019 until July 11, 2021 – already defined as the "Calculation Period") were employed by Defendant in an hourly, non-exempt role at Defendant's Maumee, Ohio facility, worked over 40 hours in any workweek during the Calculation Period, and received a production bonus. (Ex. 1, Agreement, ¶ a) The potential Class Members do not include any individual who has opted out of the Rule 23(b)(3) class. (*Id*., ¶ b) Based on Defendant's payroll records during the Calculation Period, the Parties believe that there will be approximately 120 potential Class Members. (*Id*., ¶ a)

As more fully explained in the Notice to be sent to the Class Members, the potential Class Members will have three options. First, any individual who timely returns a Consent Form and does not opt out of the lawsuit will receive 100% of their alleged damages (as calculated by

Defendant and Class Counsel's analyst), an amount equal to their alleged overtime damages, and an additional payment of $200 as liquidated damages under the OPPA. (Ex. 1, ¶ 2(b)) Second, any individual who does not timely return a Consent Form will receive 100% of their alleged unpaid overtime damages and $200 as liquidated damages under the OPPA. (*Id.*) Any individual who opts out of the Settlement Class are not Class Members and will not be paid any amount of damages. (*Id.*, ¶ 2(c))

The Agreement provides for notice to be issued to the putative members of the settlement class. (*See* Agreement, ¶ 2(b) The Notice of Collective and Class Action Lawsuit Settlement is attached as follows:

> **Exhibit A** – Notice of Collective and Class Action Settlement and Fairness Hearing to FLSA Collective Members and Rule 23 Class Members
>
> **Exhibit B** – Opt-In Form
>
> **Exhibit C** – Opt-Out Form
>
> **Exhibit D** – Update Regarding Class Action Settlement (to send with settlement checks)[1] to the Agreement (collectively settlement "Notice Packet").

(*See* Exhibits A through D to Exhibit 1)

The Settlement Notice shall inform the putative settlement class members of the pendency of this lawsuit; the terms of the proposed settlement; the amount of their individual settlement payments; their right to opt out of the settlement or object to it; and the date of the Final Approval Hearing. (*See* Exhibits A through D to Exhibit 1). Within 14 days after entry of a preliminary approval order, Defendant will provide last known addresses for Named Plaintiff and the

---

[1] Exhibit D will be mailed after the Fairness Hearing with settlement checks.

Settlement Class to the Claims Administrator. (Agreement, ¶ 6) Within 14 days thereafter, the Claims Administrator will mail the Notice Packet, as approved by the Court, by First Class U.S. Mail to the putative members of the settlement class. (*Id*.) Following the mailing of the notices, the putative class members of the settlement class will have until five (10) days before the anticipated fairness hearing to submit any objections to the settlement or to opt out of the settlement. (Exhibit B to Agreement) Five (5) days prior to the fairness hearing, the Parties will file a motion for final approval. (Agreement, ¶ 7).

Based on the below argument, and the terms of the Agreement itself, the Settlement is fair, reasonable and adequate, and it should be preliminarily approved by the Court.

## ARGUMENT

Insofar as the settlement agreement proposes to settle claims brought under the Ohio Acts and FLSA as agreed to between the parties, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b). As explained below, approval is warranted under both provisions.

## I.    The Class Should Be Certified Under Rule 23.

The Parties jointly request that the Court certify a class action for settlement purposes with respect to all state law claims asserted in the Complaint. A proposed settlement class must satisfy the requirements of Fed. R. Civ. P. 23. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). In deciding whether to certify a class action, district courts are afforded broad discretion "within the framework of Rule 23." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In making its decision, the district court may not inquire into the merits of the class representatives' underlying claims and instead must accept as true the allegations in the complaint. *Passa v. City of Columbus,* 266 F.R.D.

197, 202 (S.D. Ohio 2010) (citing *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 F. App'x 550, 555 (6th Cir. 2003)).

Rule 23 of the Federal Rules of Civil Procedure provides several avenues for class certification. In this case, the Parties seek preliminary certification under Rule 23(a) and 23(b)(3). Rule 23(a) imposes four requirements that a representative plaintiff must meet in order to be able to bring a class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The first three Rule 23(a) requirements are commonly referred to as numerosity, commonality, and typicality. Rule 23(b)(3) allows for class certification if the requirements of Rule 23(a) are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiency adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Parties submit that the requirements for preliminary certification under Rule 23(a) and 23(b)(3) are readily met in this action.

A.      **The Requirements of Rule 23(a) Are Met.**

1.      **The class is so numerous that joinder of all members is impracticable.**

"There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys.*, 75 F.3d at 1079. Notwithstanding a class size could be certified with less, "[c]ourts

routinely hold that 'a class of 40 or more members is sufficient to meet the numerosity requirement.'" *Raymond v. Avectus Healthcare Solutions*, No. 1:15cv559, 2020 U.S. Dist. LEXIS 113675, at *10 (S.D. Ohio Mar. 27, 2020) (quoting *Castillo v. Morales, Inc*., 302 F.R.D. 480, 487 (S.D. Ohio 2014)).   (internal quotations omitted). Indeed, whenever "substantial numbers" of people are affected, this requirement is satisfied. *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 852 (6th Cir. 2013).

The potential Class will consist of approximately 120 individuals. Clearly, joinder would be difficult and inconvenient, if not impossible. Accordingly, Rule 23(a)'s numerosity requirement is satisfied.

### 2.     There are questions of law or fact that are common to the Class.

"Commonality exists when class members' claims depend upon a common contention that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Raymond*, 2020 U.S. Dist. LEXIS 113675, at *11 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011))). ". . . [T]he commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996) (internal quotation marks omitted); *see also Glazer*, 722 F.3d at 853 (commonality standard turns on whether there are unifying allegations regarding a defendant's common conduct toward the class).

Here, the commonality requirement is satisfied because, among other things, all Class Members were subject to the same alleged policies or practices of Defendant not including the production bonuses into their regular rate of pay for purposes of calculating overtime. The Parties

dispute whether Defendant acted in good faith and was based on a reasonable belief that its actions did not violate the FLSA or applicable Ohio Acts. The Parties also dispute whether the proposed class is appropriate for certification as a FLSA collective action and under Rule 23. This policy or practice unites the members of the proposed Class. As such, whether each Class Members' overtime claims will prevail generally turns on the common question of whether they performed work for which they were not compensated.

Thus, there are common questions of law and fact satisfying the Rule 23(a)'s commonality requirement with regard to the Class.

### 3.    Named Plaintiff's claims are typical of the claims of the Class.

Under Rule 23(a)(3), "the claims . . . of the representative parties [must] be typical of the claims . . . of the class." *Swigert v. Fifth Third Bank*, 288 F.R.D. 177, 185 (S.D. Ohio 2012) (quoting Fed. R. Civ. P. 23(a)(3)).. Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *Raymond,* 2020 U.S. Dist. LEXIS 113675 at *11 (internal citations and quotations omitted). The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, typicality exists because the Named Plaintiff and Class Members share the same interest of recovering damages based on the same legal theory Defendant's failure to pay Class Members for all overtime compensation as a result of not including production bonuses into their

regular rates of pay. The same policies and procedures that applied to Named Plaintiff also applied to the Class as a whole. In addition, Defendant's potential defenses to the allegations made by Named Plaintiff will rise and fall with respect to the Class Members as a whole and not individually. As a result, the typicality requirement is also met.

### 4. Named Plaintiff will fairly and adequately protect the interests of the Class.

Rule 23(a)(4) requires the court to determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Swigart*, 288 F.R.D. at 185–86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests 'the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent.'" *Swigart*, 288 F.R.D. at 186 (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977)).

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied. First, Named Plaintiff does not have any interests that are antagonistic to the interests of any member of the class. As set forth above, Named Plaintiff is a member of the Class and share claims that are both common and typical of other members of the Class. Named Plaintiff has also been instrumental in prosecuting this matter. Her knowledge of the facts of this case and regular communications with Class Counsel facilitated the filing of a detailed Complaint and the use of a targeted changed of relevant pay and time records that allowed the Parties to quickly identify key facts and documents that precipitated the resolution of this case.

Second, Class Counsel are experienced in handling complex litigation, including representing plaintiffs in class actions, collective actions, and wage and hour disputes. As this Court opined on September 13, 2021, the Court is "familiar with the work of Attorneys Matthew Coffman and Daniel Bryant and finds that they are both experienced with wage and hour litigation, including class and collective actions…" *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *6 (N.D. Ohio Sept. 13, 2021) (Helmick, J.); *McCullen v. Toledo Country Club*, No. 3:18-cv-276, ECF No. 36, PageID #300 (N.D. Ohio Feb. 14, 2020) (Knepp, M.J.) (The Court "is familiar with Plaintiff's Counsel's work in this and other wage and hour cases and finds that they have the requisite experience in complex wage and hour matters."). After prosecuting an FLSA matter involving off-the-clock work that resulted in a successful jury verdict on January 8, 2020, Judge Morrison opined that both Attorneys Coffman and Bryant have a "solid amount of knowledge in the FLSA arena." *Rangel v. Paramount Heating & Air Conditioning, LLC, et al.*, No. 2:17-cv-473, 2020 U.S. Dist. LEXIS 39157, at *16, 2020 WL 1080418 (S.D. Ohio Mar. 6, 2020) (Morrison, J.). Finally, on September 25, 2020, Judge Rice opined in the Order Granting the Parties' Joint Motion for Final Approval of Class and Collective Action Settlement and Certification of Settlement Class, which involved 1,050 putative class members, that Attorneys Coffman and Bryant are "highly qualified and have substantial experience in federal litigation and class action litigation," have "substantial experience in wage-and-hour litigation," and the Court "is familiar with the legal counsel provided by attorneys Matthew Coffman and Daniel Bryant, particularly in wage and hour matters . . . " *Satterly, et al. v. Airstream, Inc.*, No. 3:19-cv-107, 2020 U.S. Dist. LEXIS 210868, at *20–21, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020).

Named Plaintiff and Class Counsel have demonstrated commitment, perseverance, and competence in representing the interests of the entire class. As such, Named Plaintiff has proven themselves more than adequate to serve as representatives of the Settlement Class.

**B.    The Requirements of Rule 23(b)(3) Are Satisfied.**

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, class certification is proper when the Court finds that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As demonstrated below, class certification under this subsection of Rule 23 is proper.

**1.    Questions of law or fact common to the members of the class predominate over any questions affecting individual class members.**

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate" and a showing that "common questions [] can be proved through evidence common to the class." *Amgen, Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 456, 459, 133 S. Ct. 1184, 1191, 1195–96 (2013); *see also Glazer*, 722 F.3d at 858 (quoting *Amgen*). "A plaintiff class need not prove that each element of a claim can be established by classwide proof," only that common questions "predominate over any questions affecting only individual [class] members." *Glazer,* 722 F.3d at 858 (quoting *Amgen*, 568 U.S. at 467)) (bracketed text in original).

In this case, the proposed class satisfies the Rule 23(b)(3) predominance requirement because all Class Members share a common set of core, predominant alleged facts and legal issues, in that all Class Members were subject to the same wage and hour practices. As outlined above, Defendant's defenses to Named Plaintiff's allegations also apply on a class-wide basis. There are key questions that will determine whether the Class Members should be provided with additional

overtime compensation, such as whether Defendant's pay practices failed to compensate them for all of their overtime hours worked, and whether Defendant's defenses apply to potential Class Members. The same evidence, such as Defendants' payroll records and time punch records, is central to the Class Members' individual claims, so there are common questions which predominate. *See Raymond*, 2020 U.S. Dist. LEXIS 113675, at *22 ("If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.") (quoting *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017))..

### 2. A Class Action is superior to other methods for the fair and efficient adjudication of the controversy.

Here, "class certification is the superior method to adjudicate this case fairly and efficiently." *Glazer*, 722 F.3d at 861 (citing *Amgen*, 568 U.S. at 861); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982)(class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure") (internal citations omitted); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994)(of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims"). The matters pertinent to this analysis include the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation already begun, the desirability of concentrating the litigation in a particular forum, and any likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the undersigned counsel are unaware of any unnamed class member's desire to individually prosecute a separate action, let alone any litigation brought by such an unnamed class

member in other venues. This is not surprising. While some members of the Class may be entitled to several hundred dollars of alleged unliquidated unpaid overtime compensation, to dedicate the time and resources necessary to prevail in this matter would greatly exceed the monetary value of an individual claim. Furthermore, the benefits of concentrating the claims in this Court through the class action mechanism are evident. Defendant's consent to the Court's jurisdiction, Checker Notions operates in this district, and Named Plaintiff and many of Defendant's witnesses are located in this district.

Finally, because a settlement obviates the need for a trial, in deciding "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . " *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Accordingly, class certification is superior to any other method in the present case.

### 3. The Proposed Notice Satisfies Rule 23 and Due Process

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Mullane*, 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) (internal citation omitted). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel*, 534 F.3d at 514 (6th Cir. 2008) (citing *DeJulius,* 429 F.3d at 944) (italics in original); *See also*

*Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res.)*, 262 F.3d 1089, 1110–11 (10th Cir. 2001); *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir.1994). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

The "individual notice" requirement of Rule 23(e) and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). *See also Satterly,* 2020 U.S. Dist. LEXIS 210868 at *13–14, 2020 WL 6536342 (S.D. Ohio, Sept. 25, 2020) (by sending notice to the last known addresses by first-class mail to the putative class members "[p]rovided Class Members with an appropriate notice under Rule 23 and met the FLSA's remedial goals."). Such notice is the "best notice practicable" in a class action. *Grunin*, 513 F.2d at 121; *Eisen*, 417 U.S. at 175. Even just one dissemination of notice, and even if just by mailing to the class member's address, may constitute "the best notice practicable under the circumstances," satisfying "the notice requirements of Rule 23" and "the due-process requirement as well." *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 U.S. Dist. LEXIS 146543, at *29 (N.D. Ohio Oct. 14, 2014).

In the present case, the proposed Notice satisfies — and actually goes beyond — these requirements. Under the terms of the Agreement, no later than twenty-eight (28) days after the Court conditionally certifies the Class Settlement and preliminarily approves the Agreement, the Settlement Notice will be sent to the settlement class members by first-class mail to their last known addresses. (Ex. 1, Agreement ¶ 6) Further, if the Notice is returned to the Claims Administrator as undeliverable, it will proceed per its normal policy or practice to attempt to locate

a new address through reasonable means such as the National Change of Address program certified by the United States Postal Service and other standard skip trace methods. (*Id*.). If a new address is located, the Claims Administrator shall resend the Notice by first class mail. (*Id*.). This process is reasonably calculated to apprise the settlement class members of the pendency of the settlement and afford them an opportunity to present their objections or opt out of the settlement. *See Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, ECF No. 40, PAGEID # 377-78 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) and ECF No. 41 (S.D. Ohio Mar. 12, 2019) (Watson, J.) (approving Report and Recommendation).

The Parties respectfully submit that their proposed Notice meets the requirements of Rule 23 and due process and the Parties request that the Court approve the Notice and direct its issuance to the Class.

## II.     The FLSA collective action certification should be maintained.

The FLSA provides that a person may maintain an action to recover wages "on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). To do so, a claimant must ultimately show that he is "in fact, similarly situated" to the employees to whom he seeks to send notification of the action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (internal quotation marks omitted). " . . . [P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *overruled in part on other grounds*, *Campbell-Ewald Co. v. Gomez*, 557 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)). The representative plaintiff must show "only that 'his position is similar, not identical, to the positions held by the putative class members," and this determination "need only be based on a modest factual showing." *Comer*, 454

F.3d at 548 (internal quotation marks omitted). The determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (internal quotation marks omitted).

The Parties have met this standard, and the Court has already granted conditional certification pursuant to the FLSA. Moreover, as set forth above and for settlement purposes only, all Class Members, including Named Plaintiff, were considered to be subject to the same pay practices. Accordingly, the Court should maintain conditional certification with respect to the Settlement Class pursuant to 29 U.S.C. § 216(b).

### III.    The Settlement should be approved because it is fair, reasonable, and adequate.

All of Named Plaintiff's class claims under state law are brought pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rule 23 provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Sixth Circuit has held that "[b]efore approving a [Rule 23] settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing Fed. R. Civ. P. 23(e)(1)(C)) .

Named Plaintiff's claim for unpaid overtime wages under federal law is brought as a collective action under the FLSA. The FLSA requires that either the Secretary of Labor or a judge approve an FLSA collective action settlement in order for the settlement to be binding. *See* 29 U.S.C. § 216(b), (c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). When parties bring a proposed settlement of an FLSA claim before a court, that court must scrutinize the settlement to determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id. at* 1355; *see also Crawford v. Lexington-Fayette Urban Cty.*

*Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, *11 (E.D. Ky., Oct. 23, 2008) (quoting *Lynn's Food Stores*). If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

### A. The Settlement satisfies the Sixth Circuit's seven-factor test.

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *overruled on other grounds*, 670 F.2d 71. Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 NEWBERG ON CLASS ACTIONS §11.41 (4th ed. 2007). Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005), (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Sweet v. Gen. Tire & Rubber Co.*, No. C75-181A, 1982 U.S. Dist. LEXIS 12371, at *14, 1982 WL 278 (N.D. Ohio Mar. 17, 1982) ("The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness.").

The Sixth Circuit has identified the following factors to consider in determining whether a settlement is fair, reasonable, and adequate under *both* the FLSA and under Rule 23:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinion of class counsel and class representatives; (6) the reaction of absent class members; and (7) public interest.

*E.g.*, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (applying seven-factor test in Rule 23 context); *Combs v. Trugreen*, No. 1:08-cv-489, 2010 U.S. Dist. LEXIS 162128, at *13

(S.D. Ohio, Sept. 2, 2010) (applying seven-factor test in FLSA collective action context); *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 U.S. Dist. LEXIS 67887, at *7–9 (S.D. Ohio, June 24, 2011) (same). The Court may choose to consider only those factors it considers relevant to the settlement at hand, and often, "inquiry into one factor necessarily overlaps with inquiry into another." *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002). The Court is not required to determine if the settlement is the fairest possible resolution of the claims of each plaintiff, but rather whether the settlement taken as a whole is fair, adequate, and reasonable. *Shy v. Navistar Int'l Corp.*, No. C-3-92-333, 1993 U.S. Dist. LEXIS 21291, at *12 (S.D. Ohio May 27, 1993).

The Settlement satisfies the seven-factor test, as explained in more detail below.

### 1.    There is no evidence of fraud or collusion.

The Parties' counsel each have extensive experience with complex litigation including litigating Class Action, FLSA, and other wage and hour claims. The Agreement was achieved after months of analysis and considerable arms-length good-faith negotiations between the Parties.

Furthermore, the Parties have a bona fide dispute not only with regard to Plaintiff's claims as a whole, but with regard to numerous specific issues in the litigation. While it is undisputed that Defendant pays its hourly workers a production bonus, Defendant maintains that its policy was conducted in good faith. In addition, the Parties disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies. This bona fide dispute is central to the question of whether Defendant is liable for potential overtime violations under federal and applicable state law.

In light of these bona fide disputes, among others, the experience of the Parties' counsel, and the months of analysis and arm's length settlement negotiations, there is no indicia of fraud or

collusion.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

As recently observed, "wage and hour class and collective actions, such as this, are inherently complex…" *Harsh*, 2021 WL 4145720, at *5 (citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 U.S. Dist. LEXIS 204371, at *10, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *see also Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *15, 2020 WL 6536342 (S.D. Ohio Sep. 25, 2020) ("From the outset, the Court notes that wage and hour class and collective actions, such as this one, are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."). Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of the claims alleged in this case, as outlined above.

If forced to litigate this case further, the Parties would certainly engage in additional complex, costly, and protracted discovery—including the further production and review of electronic and paper documents and one or more depositions—and motion practice. The Settlement, on the other hand, provides substantial relief to the Class Members and avoids delay in a prompt and efficient manner that amplifies the benefits of that relief through the economies of class resolution.

### 3. Discovery was sufficient to allow the Parties to act intelligently.

To confirm that the Named Plaintiff and Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.); *Satterly*, 2020 U.S. Dist. LEXIS

210868at *15–16. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Satterly,* 2020 U.S. Dist. LEXIS 210868 at *16 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.* (internal citations omitted)*; Mitchell v. Indep. Home Care, Inc.,* No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at *10–11, 2019 WL 696941 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) (internal citations omitted), *report and recommendation adopted*, No. 2:17-cv-717 2019 U.S. Dist. LEXIS 39104 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *see also Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *8, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) (stating that while the parties had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendant. Class Counsel continued to perform such research and investigation during the pendency of this action, including as the Parties exchanged applicable authority upon which their positions were based. Likewise, Defendant's counsel has also performed a significant amount of research and factual investigation in this matter. Thus, the legal issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

The Parties also engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Defendant produced payroll and time punch records for all potential

members of the Class, which have been analyzed by Defendant, Plaintiff's Counsel, and cross-referend by Plaintiff's Counsel's expert. Both Parties used that data to construct damages models. Using those models, the Parties engaged in negotiations and came to an agreement. Therefore, the Parties sufficiently informed to negotiate a fair, reasonable, and adequate settlement.

### 4. The risks of litigation and the uncertainty of recovery favor approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raised affirmative defenses to Named Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

Class Members' range of possible recovery is also open to dispute. Even if Named Plaintiff succeeded on the merits of her claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties significantly disagree as to whether the Defendant's actions were made in good faith and whether a 2-year or 3-year lookback applies. Here, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for more years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *9, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 899 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the Parties would have engaged in further discovery, including, but not

limited to additional responses to discovery requests, depositions, potential discovery-related motion practice, and other dispositive motion practice. Further, even if Plaintiff prevails on the merits, any recovery could be negatively curtailed if a jury concludes that Defendant acted in good faith and Plaintiff fails to establish a willful violation of the law. Moreover, an appeal could be filed.

On the other hand, Defendant could face the prospect of class-wide liability to hundreds of current and/or former employees, liquidated damages, and attorney's fees following lengthy and expensive litigation. These considerations all support approval of the settlement. Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive a recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *7; *see also Hall v. U.S. Cargo and Courier Serv., LLC*, No. 2:16-cv-330, 2019 U.S. Dist. LEXIS 197945, at *9, 2019 WL 6001198 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action).

### 5. Experienced counsels' views favor approval.

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *19–20; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *23, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the

best interests of the class.").

The Parties, through their attorneys, voluntarily agreed to the terms of the settlement during arm's length, good-faith negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation and the mediation process. The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. It is the opinion of counsel for both Parties that the settlement reached is a fair compromise of genuinely disputed claims, and it is respectfully submitted that resolution of this matter as proposed serves the best interests of both Parties.

> **6.** **The reaction of absent class members cannot be assessed until after notice has issued.**

There has not yet been an opportunity to gauge the reaction of absent class members as class notice has not yet been issued. The parties are of the opinion that this factor will likely favor approval because "[n]one of the Parties, their counsel, nor any person on their behalf, shall seek to solicit or otherwise encourage anyone to object to the settlement, or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement claims process." (Ex. 1, Agreement, ¶ 7(e)) However, this issue can be reexamined in the motion for final approval and certification.

> **7.** **The public interest favors settlement.**

Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *21; *Edwards v. City of Mansfield*, No. 1:15-CV-959, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *30–31 (quoting *Lynn's Food Stores, Inc.*, 679

F.2d at 1353. Indeed, the "[t]ouchstone for final approval is the effect on the class <u>as a whole</u> in light of the particular circumstances, which include the public policy encouraging comprehensive settlement of class actions and multi-party litigation." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, at *35 (E.D. Mich., Dec. 20, 1996) (underlining in original). Accordingly, resolving the present matter through settlement serves the public interest by providing fair and efficient payments to the settlement class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

For all of these reasons, the Settlement is fair, reasonable, and adequate under the Sixth Circuit's seven-factor test, and therefore the Settlement should be approved by the Court.

**B.     The settlement payments are fair, reasonable, and adequate.**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)). In the present case, the settlement establishes a pool of settlement funds that will be divided among the settlement class members depending on which option he or she selects based upon their calculated alleged damages. This ensures an equitable distribution of settlement proceeds that is directly tied to the harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds.

**1.     The individual payments are reasonable and adequate.**

As outlined in the Settlement Agreement, Defendant will provide a Total Settlement Amount of $96,377.58 to cover the full and final resolution of all claims in the Lawsuit. The Total Settlement Amount includes all payments to Named Plaintiffs, Opt-In Plaintiffs, Class Members,

the incentive award to Named Plaintiff, Attorneys' Fees and Costs for Class Counsel, and settlement administration costs.

Depending on which option Class Members select will depict the amount of alleged unpaid overtime compensation he or she will receive. (Agreement, Exhibit A) As outlined above, any individual who timely returns a Consent Form (i.e. Option 1) will receive the maximum amount of unpaid overtime damages, an amount equal to it, and $200 in the form of liquidated damages under the OPPA. (*Id*., p. 15) If a Class Member does not return a Consent Form and does not object or opt-out, that individual will receive his or her alleged unpaid overtime damages and $200 in liquidated damages under the OPPA. (*Id*., p. 16) Any individual who opts out will not receive any compensation and anyone who objects risks not receiving any compensation. (*Id*.) Moreover, the payments reflect approximately 100% of the Class Members' overtime damages which overwhelmingly exceeds what this Court indicated was "substantial relief" and the Sixth Circuit recently indicated was a "substantial recovery." *Harsh*, 2021 WL 4145720, at *3-9 (describing recovery of 42% of the alleged overtime damages as an "excellent result" because it represented "substantial relief" to the impacted individuals); *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 2021 WL 129067 (6th Cir. Jan. 14, 2021) (describing 32% of alleged damages as "substantial recovery").

For these reasons, it is respectfully submitted that the settlement payments constitute a fair and reasonable resolution of the claims of the Named Plaintiff, Opt-In Plaintiffs, and the other Class Members.

### 2.    Named Plaintiff's incentive award is proper and reasonable.

The Sixth Circuit declared that "numerous courts have authorized incentive awards . . . [as] efficacious ways of encouraging members of a class to become class representatives and rewarding

individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). *Accord Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4–5, 2018 WL 2095172 (N.D. Ohio May 4, 2018). As one Court observed, incentive awards to a representative plaintiff recognizes the value of his or her services on behalf of other participants are proper. *See In re Dunn & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) ("Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.").

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374; *see also Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members"). Named Plaintiffs also attached their names to a publicly filed lawsuit against their former employer. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (citing *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, at *9, 2011 WL 784602 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting")).

Named Plaintiff contributed significant time, effort, and detailed factual information to Class Counsel. Furthermore, she provided Class Counsel with information throughout the pendency of this action and her efforts played a significant role in enabling the Parties to

successfully resolve this matter. Named Plaintiff's time and efforts support the requested service payment of $5,000, particularly given the substantial relief obtained on behalf of the Class against her then-current employer.

Named Plaintiff's proposed service payment set forth in the agreement is within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Satterly*, 2020 U.S. Dist. LEXIS 210868 at *25–26 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. 11019, at *16–17, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 U.S. Dist. LEXIS 204371, at *21–22, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *17, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *20, 2014 WL 3447947(S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *20, 2013 WL 2295880 (S.D. Ohio May 25, 2013) (awarding $12,500 service award); *Abadeer v. Tyson*, No. 3:09-cv-00125, Dkt. 420 (M.D. Tenn. Oct. 17, 2014) (approving service awards ranging from $500 to $11,500 for participating plaintiffs).

Thus, the requested service award is reasonable and appropriate here. Indeed, the requested awards are lower than that which Courts in the Sixth Circuit and elsewhere have determined were appropriate in similar matters.

**C.      Plaintiff's Attorney's Fees and Reimbursement of Costs to Plaintiff's Counsel Are Proper and Reasonable Using the Lodestar Method.**

The mandatory prevailing plaintiff's attorney's fees provision of the FLSA and the Ohio Wage Act exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of each Act. As more fully outlined below, Plaintiff seeks approval of the amount agreed upon by the Parties in the Agreement for payment in full of Class Counsel's attorney's fees as well as reimbursement of advanced costs and expenses incurred in the prosecution of this matter. In particular, Plaintiff requests her attorneys' fees using the lodestar method capped at $37,500 and reimbursement of reasonable expenses incurred in the prosecution of this action in the amount which are currently $1,952.00 for payment of Class Counsel's costs advanced in this case. The Claims Administrator's settlement administration costs will be paid by Defendant directly in the amount of $6,105.00. Defendant does not oppose this request. (*See* Ex. 1, Agreement, ¶ 4.) The Court should grant the requested attorneys' fees and costs because (1) the attorneys' fee award sought is appropriate in this case in view of the work performed and the results achieved; and (2) the requested expenses were incurred in the successful prosecution and settlement of this case and are reasonable.

The FLSA[2] has a fee-shifting provision which provides that reasonable attorney fees and

_____

2 The Ohio Wage Act also provides for the recovery of attorney fees and costs, but the analysis will be limited to the

costs should be awarded to a prevailing party. 29 U.S.C. §216(b). The federal courts have long

recognized the profound importance of plaintiffs' right to recover attorney's fees under the FLSA.

In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local

307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984), the

Court recognized that an award of attorney's fees is mandatory under 29 U.S.C. §216(b). The

Court explained, that "the purpose of §216(b) is to insure effective access to the judicial process

by providing attorneys for prevailing plaintiffs with wage and hour grievances; "obviously

Congress intended that the wronged employee should receive his full wages . . . without incurring

any expense for legal fees or costs." *Id.* at 502 (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–76

(4th Cir. 1946)). Plaintiffs "should ordinarily recover an attorney's fee unless special

circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429

(1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912). Indeed, "[w]hen

preliminarily approving a class settlement, the Court's 'settlement review should include

provisions for payment of class counsel.'" *In re Skechers Toning Shoe Prods. Liab. Litig*., No.

3:11-MD-2308-TBR, 2012 U.S. Dist. LEXIS 113641, *28–30, 2012 WL 3312668 (W.D. Ky. Aug.

13, 2012) (quoting MANUAL FOR COMPLEX LITIGATION § 21.7 (4th ed. 2004)).

The FLSA does not establish what constitutes a reasonable fee; consequently, "[t]he

determination of a reasonable fee must be reached through an evaluation of a myriad of factors,

all within the knowledge of the trial court, examined in light of the congressional policy underlying

---

right to attorney fees and costs under the FLSA. The Ohio Wage Act, R.C. § 4111.10(A) states that "Any employer
who pays any employee less than wages to which the employee is entitled under section 4111.03" (the overtime
provision that states an employer "shall pay an employee for overtime at a rate of one and one-half times the
employee's wage rate for hours worked in excess of forty hours in one workweek") allows for the recovery of "costs
and reasonable attorney's fees as may be allowed by the court."

the substantive portions of the statute providing for the award of fees." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). That determination is informed by both the purpose and practical operation of the FLSA. "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate*, 732 F.2d at 502).

The nature of FLSA overtime awards usually focuses the Court on the vindication of statutory rights rather than the amount recovered. "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] 'encourage[s] the vindication of congressionally identified policies and rights.'" *Id.* at 1134–35 (quoting *United Slate,* 732 F.2d at 503); *Accord City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("reject[ed] the proposition that fee awards  . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers"). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *Harsh*, 2021 WL 4145720 at *6 (N.D. Ohio Sept. 13, 2021) (Helmick, J.) (quoting Fed. R. Civ. P. 23(h)). In addition, the FLSA and the Ohio Constitution provide the right to reasonable attorneys' fees for a party who recovers unpaid wages. *Id*. (citing 29 U.S.C. § 216(b); Ohio Const., Art. II, Section 34a).

District courts may use either percentage of the fund or lodestar method to calculate fee awards, but the lodestar method is usually implemented in certain wage and hour cases involving relatively small claims and therefore small amounts of damages in question and, as a result, counsel for employees will inevitably be required to expend substantial resources and time, sometimes

accruing fees several times greater than the value of damages in the case. *Harsh*, 2021 WL 4145720 at *8. In these circumstances, such a result is still necessary because the remedial purpose of the FLSA is to help an employee recover their wages, however significant or small. *Id*.

To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel "reasonably expended" on the case. *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). The district court has some discretion regarding the rates and hours that are reasonable, "but only when the court provides a clear and concise explanation of its reasons for the fee award." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). Multiplying reasonable rates times reasonable hours yields the lodestar. *See Waldo*, 726 F.3d at 821. There is no proportionality limit on recoverable attorneys' fees either. *Rembert*, 986 F.3d at 617. As noted above, the very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them. *Id*. If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to "attract competent counsel" to represent them. *Id*. (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Regardless of local precedent, therefore, a district court abuses its discretion if it limits the fees awardable under the FLSA to a percentage of the plaintiff's recovery. *Id*. Importantly, when reviewing FLSA attorney's fees applications, the Court remains cognizant that the fee-shifting provision insures " 'effective access to the judicial process' " for employees with wage and hour grievances. *Funk v. Airstream, Inc.*, No. 3:17-cv-260, 2019 WL 4599816, at *2, 2019 U.S. Dist. LEXIS 162334, at *4-5 (S.D. Ohio Sep. 23, 2019) (Rice, J.).

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes is the legal community within the court's territorial jurisdiction or venue. *See, e.g., Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The starting point for determining the amount of a reasonable fee is multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Burcham v. Taubra Corp.*, No. 3:17-cv-168, 2018 WL 3840827, at *2 (S.D. Ohio Aug. 13, 2018) (Rose, J.) (citing *Hensley*, 461 U.S. at 433-34). In a claim for attorney's fees, the court will determine the number of hours reasonably expended on the litigation and multiply that figure by a reasonable hourly rate. *Hensley*, 461 U.S. at 434. *See also Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999) ("a court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate") (internal citations omitted)

In arriving at the reasonable hourly rate, the court typically looks to the prevailing rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum*, 465 U.S. at 895). *See also Project Vote v. Blackwel*l, Case No. 1:06-cv-1628, 2009 WL 917737 *10-11 (N.D. Ohio Mar. 31, 2009) (citing *Blum*, 465 U.S. at 895-96 n. 11). "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.'" *Project Vote*, 2009 WL 917737 at *11 (quoting *Dowling*, 2008 WL 906042 at *2) (internal citations omitted).

Current market rates, rather than historic market rates, of compensation are appropriate to compensate for the delay in payment of fees. *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 107 S. Ct. 3078, 3082 (1987). *See also Gonter v. Hunt Valve Company, Inc*., 510 F.3d 610, 617 (6th Cir. 2007) (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir.

2005) and *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co*., 684 F.Supp. 953, 958 (6th Cir. 1988)) (applying the current rate rather than the historical rate due to the fact that compensation is often not received for several years). Here, Plaintiffs' Counsel seek hourly rates for the attorneys that represent current market rates for individuals with their skills, experience, and reputation. In particular, attorney Matthew J.P. Coffman seeks approval of his hourly rate of $450 per hour and attorney Daniel I. Bryant seeks approval of his hourly rate of $400 (*See* **Ex. 2** Coffman Dec. at ¶ 35-38; **Ex. 3**, Bryant Dec. at ¶ 33-39). While Defendant does not oppose this request (Ex. 1, Agreement, ¶ 4), analysis of the factors used by the Sixth Circuit still warrant the request.

    **D.**     **Analysis of Factors Used by the Sixth Circuit to Evaluate an Award of Attorneys' Fees Supports Court Approval of the Requested Fee Recovery.**

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), the Sixth Circuit established six relevant factors in the analysis of determining reasonable attorneys' fees. These factors include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services of an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Id.* As discussed below, each of these factors weighs in favor of Plaintiffs' Counsel's fee and cost recovery of <u>$39,452</u>.3

    **(1)**  **The Value of the Benefit Rendered to the Plaintiffs Supports the Award of the Requested Attorney Fees.**

---

3 Attorneys' fees in the capped amount of $37,500 and reimbursement of costs in the amount of $1,952.00. As noted in the Agreement, the Settlement Administrator's settlement administration costs in the amount of $6,105.00 will be paid directly by Defendant.

The Supreme Court defined prevailing parties as parties that achieve "success on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. The Supreme Court further explained that, "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989). *See also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties"). *See also, Zoll,* 88 F.2d at 252 ("the minimum award should generally be not less than the number of hours claimed times the attorney's regular hourly rate").

In this case, but-for the efforts and experience of Plaintiff's Counsel in complex wage and hour matters, Plaintiff could not have achieved a more successful outcome in this litigation. Indeed, the Rule 23 putative class members have the potential of receiving 100% of their unpaid overtime compensation within the Calculation Period, an amount equal to the alleged unpaid overtime, and an additional $200 if they timely return the proposed Consent Form. (Ex. 1, Agreement, ¶ 2(b)). Certainly, Plaintiffs benefited from counsel's legal skill in obtaining such a successful result. As a result, this factor favors approval of Plaintiff's request.

### (2) Society's Stake in Rewarding Attorneys Who Produce Such Benefits Also Supports the Award of the Requested Attorney Fees.

The second factor, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive for others" also supports Plaintiff's Counsel's fee request. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior-

particularly when the individual injuries are too small to justify the time and expense of litigation – and as private law enforcement regimes that free public sector resources." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253 at *7 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (quoting *Gascho*, 822 F.3d at 287). Indeed, "[w]ithout a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases." *Id*. Plaintiff's Counsel's fee is reasonable in light of the public policy objectives served by Counsel's success in this case. *See also In re Cardinal Health*, 528 F.Supp.2d at 765-66 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) ("'Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling…claimants to pool their claims and resources' to 'achieve a result they could not obtain alone.'")). *See also Chesher v. Neyer*, 2007 WL 4553908, at *3 (S.D. Ohio Dec. 19., 2007) (citing *In re Union Carbide Corp. Consumer Products Business Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("Note [*sic*] only did the final settlements provide a benefit to the public, but…individuals would lack the ability to protect their interests in many cases if courts refused to fairly compensate counsel who pursue class actions.")).

As observed by the Sixth Circuit above, wage and hour cases, like this one, often involve a large number of workers with relatively small individual claims. Though the claims are individually small, the unpaid wages make a significant difference in the lives of workers. Society has a strong interest in awarding attorneys who take on these cases and recover real benefits for exactly the type of workers the FLSA is designed to protect. Were it not for the work of attorneys such as Plaintiff's Counsel, the work of a number of employees would go uncompensated or undervalued. *See Rembert*, 986 F.3d at 616-17. Application of the above principles to this case

demonstrates that *Ramey*'s second factor as to "society's stake in awarding attorney's fees" favors Court approval of Plaintiff's Counsel's requested fee recovery.

### (3) The Fact that the Services Were Undertaken on a Contingent Fee Basis Also Supports the Award of the Requested Attorney Fees.

Despite having made investments of time and out-of-pocket expenses through-out this litigation, Plaintiff's Counsel have received no compensation for this case. (*See* **Ex. 2** Coffman Decl., ¶ 32; **Ex. 3,** Bryant Decl., ¶ 30) They have faced a significant risk of nonpayment because they undertook this litigation on a contingent basis. (*Id.*) *See Wright*, 2018 WL 3966253 at *6; *In re Cardinal Health*, 528 F.Supp.2d at 766 ("Several courts consider the risk of non-recovery the most important factor in fee determination"); *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 1029, 1043 (S.D. Ohio 2001) ("contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery").

This factor weighs in favor of approving Plaintiff's Counsel's requested fee recovery. Here, Plaintiff's Counsel have devoted approximately 96.8 hours to this action and have risked non-payment of $1,952.00, knowing that, if their efforts are unsuccessful, they will recover nothing. Given the risks of establishing liability and damages and the possibility of non-payment that has been present throughout this litigation, award of the requested fee is the fair result.

### (4) The Value of the Services of an Hourly Basis also Supports the Award of the Requested Attorney Fees.

The fourth *Ramey* factor also strongly favors Plaintiff's Counsel's requested fee recovery. As outlined above, the efforts of Plaintiff's Counsel resulted in the Rule 23 putative class members having the potential of receiving 100% of their unpaid overtime compensation within the Calculation Period, an amount equal to the alleged unpaid overtime, and an additional $200 if they timely return the proposed Consent Form. (Ex. 1, Agreement, ¶ 2(b)). In light of the significant

recovery, the amount of Plaintiff's Counsel's fees and expenses is fair and reasonable and should be approved. *See Zoll*, 88 F.2d at 252 ("the minimum award should generally be not less than the number of hours claimed times the attorney's regularly hourly rate."). *See also Adcock-Ladd, supra*, 227 F.3d at 350 (6th Cir. 2000) (A "strong presumption favors the lawyer's entitlement to his lodestar fee."). Moreover, Plaintiff's Counsel's work does not end at final approval. *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at \*7 (S.D. Ohio May 17, 2021)(Rice, J.). Plaintiff's Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters. *Id*.

As of the filing of this Motion and as part of settlement negotiations, the firms representing Plaintiff and the Putative Class Members have capped their attorneys' fees at $37,500 and $1,9520.00 in costs/expenses, but more time will be expended through the Rule 23 approval process and administering the settlement. (*See* **Ex. 2**, Coffman Decl. at ¶ 37-40; **Ex. 3**, Bryant Decl. at ¶ 36-39.) Because Plaintiff's Counsel is seeking to recover their lodestar, the fourth *Ramey* factor weighs heavily in favor of Plaintiff's Counsel's fee request.

### (5) The Complexity of the Litigation Also Supports the Award of the Requested Attorney Fees.

As this Court has observed, wage and hour matters, including class and collective actions, are inherently complex. *Harsh*, 2021 WL 4145720, at \*5. *Accord Satterly*, 2020 WL 6536342, at \*5; *Brandenburg*, 2019 WL 6310376, at \*3; *Wright*, 2018 WL 3966253, at \*3. Though the subject matter of the lawsuit was not unfamiliar to Plaintiff's Counsel, payroll and time punch records were still required to be analyzed based on workweeks when Defendant's employees both worked overtime and received additional remuneration. "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed

to be the reasonable fee to which counsel is entitled." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)). That presumption applies to Plaintiff's request because their attorneys have culled their hours, their rates have previously been approved by this Court, and/or have other further established their rates and fees are appropriate in light of their expertise and skill. *Harsh*, 2021 WL 4145720, at *6 (N.D. Ohio Sept. 13, 2021) (Helmick, J.); *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *20–21, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020)(Rice, J.) (referring to attorneys Coffman and Bryant as "highly qualified and have substantial experience in federal litigation and class action litigation" and "substantial experience in wage-and-hour litigation."); *McCullen*, No. 3:18-cv-276, ECF No. 36, PageID #300 (N.D. Ohio Feb. 14, 2020) (Knepp, M.J.); *Rangel*, 2020 U.S. Dist. LEXIS 39157, at *16, 2020 WL 1080418 (S.D. Ohio Mar. 6, 2020) (Morrison, J.). *See also* **Ex. 2**, Coffman Dec. at ¶ 9-11; **Ex. 3**, Bryant Dec at ¶ 5-9)

**(6) The Professional Skill and Standing of Counsel.**

The final *Ramey* factor, "the skill and efficiency of the attorneys," also favors Plaintiffs' Counsel's requested fee recovery. *Wright*, 2018 WL 3966253 at *7. The skill and efficiency of the attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *See Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991) ("Finally, all counsel, Defense Counsel and Class Counsel alike, exercised the highest degree of skill and competence in this proceeding. It should be noted that the attorneys and their respective law firms enjoy the highest degree of respect in their communities. Furthermore, they have an outstanding reputation both locally and nationally.") As recently observed, when attorneys establish an expertise in a particular area such as wage and hour litigation, their hourly rates are further justified. *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-CV-119, 2020 WL

6498956, at *7 (S.D. Ohio Nov. 5, 2020)(Rice, J.) (citing *Brandenburg*, 2019 WL 6310376, at *6) (holding that counsel's success on a specific type of case, specific legal issue, or results in other mattes that directly benefit potential class members in future cases further justifies their hourly rates).

Fee applicants are to exercise "billing judgment," i.e., to exclude from their fees excessive, redundant or otherwise unnecessary hours, which would be unreasonable to bill a client. *See West v. AK Steel Corp. Retirement Accumulation Pension Plan*, 657 F.Supp.2d 914, 921 (S.D. Ohio 2009) (quoting *Hensley*, 461 U.S. at 437). Here, counsel has taken the affirmative steps to avoid excessive, redundant or duplicative hours during the litigation of this matter.

Plaintiff's Counsel seeks Court approval of their lodestar (i.e. hours expended multiplied by hourly rates) as follows:

| Name | Title | Total Hours | Rate per Hour | Total Fees |
|---|---|---|---|---|
| Matthew J.P. Coffman | Member | 29.3 | $450.00 | $13,185.00 |
| Daniel I. Bryant | Member | 67.5 | $400.00 | $27,000.00 |
| **TOTAL** | | | | **$40,185.00** |

The services rendered to Plaintiffs reflect the extensive experience Plaintiff's Counsel has in collective/class action matters under the FLSA and employment law, experience that is outlined in the declarations submitted by Plaintiff's Counsel to the Court. (*See* **Ex. 2**, Coffman Decl. and **Ex. 3**, Bryant Decl.) Plaintiff's Counsel requests that the Court approve of their hourly rates of pay ($450 per hour for attorney Matthew J.P. Coffman and $400 per hour for attorney Daniel I. Bryant) and hours expended in this matter. Based on Plaintiff's Counsel's extensive experience, expertise in the wage and hour practice area, and their efforts throughout this litigation to achieve an

excellent result on behalf the Class, the "skill and efficiency of the attorneys" factor weighs in favor of Court approval of the requested fee recovery. *Wright*, 2018 WL 3966253 at *7; *Enterprise Energy*, 137 F.R.D. at 249; *Arp*, 2020 WL 6498956, at *7; and *Brandenburg*, 2019 WL 6310376, at *6.

### A. Plaintiffs' Counsel's Costs and Expenses are Reasonable because they were necessary and integral to the successful prosecution of Plaintiffs' claims.

When costs and expenses are incurred that are necessary to litigate and prosecute the lawsuit, they are reasonable. *Wright*, 2018 WL 3966253 at *7. In this case, the out-of-pocket costs are $1,952.00. (Ex. 1, Agreement, ¶ 4). This includes reasonable costs for commencement of the litigation, postage, investigatory costs, and expert fees for purposes of cross-referencing alleged unpaid overtime damages. *Id.* Ex. 3, Bryant Decl., ¶ 37).

The Parties agree that the above provision of attorneys' fees and costs is proper and reasonable in light of the efficient and successful results obtained in this case, the level of experience of Class Counsel in complex litigation such as this, and the time and expense that Class Counsel have expended and will continue to expend to fully resolve this matter. The Parties respectfully request that the Court preliminarily approve the Attorneys' Fees and Costs provision of the Agreement, subject to this Court's order on a future motion by Class Counsel for fees and costs in compliance with Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure.

For all of these reasons, the Settlement is fair, reasonable, and adequate, and the specific payments contemplated by the Agreement are equitable. The Settlement should be approved under both Rule 23 and the FLSA.

## **CONCLUSION**

For all of the reasons stated above, Named Plaintiff and Defendant request that the Court issue an order:

1) preliminarily approving the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

2) preliminarily certifying a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for the sole purpose of settlement, as described in the Agreement;

3) maintaining conditional certification of the collective action pursuant to 29 U.S.C. § 216(b) for the purpose of settlement;

4) preliminarily approving the Agreement and its terms;

5) appointing Coffman Legal, LLC and Bryant Legal LLC as Class Counsel;

6) appointing Analytics Consulting, LLC as the Claims Administrator for purposes of administering the settlement;

7) approving as to form, content, and manner of the proposed Notice Packet, attached to the Agreement as Exhibits A, B, C, and D;

8) directing the mailing of Notice by first class mail to the applicable groups of Opt-In Plaintiffs and/or Class Members (as defined in the Agreement);

9) setting a deadline for objections to the settlement;

10) setting a date for the final fairness hearing in at least 90 days; and

11) setting a proposed deadline for the Court's entry of final judgment after the Fairness Hearing for this class and collective action settlement.

Respectfully submitted,

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road
Suite W-126
Columbus, Ohio 43220
Direct: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

/s/Matthew J.P. Coffman
Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1550 Old Henderson Road
Suite W-126
Columbus, Ohio 43220
Ph: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*Attorneys for Named Plaintiff*
*and those similarly situated*

/s/ Roman Arce
Roman Arce (0059887)
**MARSHALL & MELHORN, LLC**
Four SeaGate, Eighth Floor
Toledo, Ohio 43604
Telephone:  (419) 249-7100
Facsimile: (419) 249-7151
arce@marshall-melhorn.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of March, 2022, a true and accurate copy of the foregoing was electronically filed with the United States District Court for the Northern District of Ohio via the Court's CM/ECF system, and that such system will send electronic notice of the filing to all counsel of record.

/s/ Daniel I. Bryant
Daniel I. Bryant (0090859)