**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Rhonda Gresky, *on behalf of herself and others similarly situated*, | Case No.  3:21-cv-01203 |
| Plaintiff, | Judge Jeffrey J.  Helmick |
| v. | |
| Checker Notions Company Inc., d/b/a Checkers Distributors, | ORDER |
| Defendant. | |

The matter before the Court is the Joint Motion for Certification of the Settlement Class and Final Approval of Class Action Settlement ("Joint Motion for Final Approval").[1]  For the reasons set forth below, I grant the Motion.

I.     **Background**

On June 17, 2021, Plaintiff Rhonda Gresky ("Named Plaintiff") filed her Collective and Class Action Complaint for Violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.  §§ 201–19; the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C.  §§ 4111.01, 4111.03, and 4111.10; and the Ohio Prompt Pay Act ("OPPA"), O.R.C.  § 4113.15 and the Ohio Acts.[2]  In the Complaint, Named Plaintiff alleges that she and other similarly situated hourly employees regularly worked more than 40 hours per workweek but were not paid all overtime wages owed under the FLSA and applicable Ohio Acts.[3]  She maintains that, in addition to their respective base hourly wage, Defendant Checker Notions Company, Inc.  d/b/a Checker Distributors ("Defendant") paid her and over one hundred (100) other hourly employees production bonuses

---

[1] Doc. No. 16.
[2] Doc. No. 1.
[3] *Id*. at PageID # 4.

("Additional Remuneration") as an incentive to encourage them to work more steadily, rapidly, and efficiently and/or to encourage them to remain with the company given its importance to the overall operation of Defendant's business.[4]

As such, Named Plaintiff alleges that the Additional Remuneration was non-discretionary and should have been included in the regular rate of pay for those who worked over 40 hours and received Additional Remuneration in one or more workweek(s).[5]  During workweeks when Named Plaintiff and similarly situated others worked overtime and received Additional Remuneration, they allege that they are owed unpaid overtime compensation and other compensation as a result of Defendant's failure to include the Additional Remuneration into their regular rates of pay for purpose of calculating their correct overtime rates.[6]

While Defendant admits that it pays Additional Remuneration, it denies Named Plaintiff's allegations, denies that it willfully violated the FLSA, states that it complied with the FLSA and applicable state laws at all times in good faith, and maintains that it had reasonable grounds to believe that its act or omission did not violate the FLSA or applicable Ohio law.[7]  Defendant also denies that Named Plaintiff's claims were subject to class action certification or collective action certification.[8]  It also raised several affirmative defenses.[9]

Based on Named Plaintiff's allegations set forth in the Complaint, the Named Plaintiff and Defendant (the "Parties") stipulated to conditional certification,[10] and I conditionally certified the lawsuit as a Collective Action Pursuant to 29 U.S.C. § 216(b) on September 29, 2021.[11]  The Parties also stayed the case deadlines, including issuing notice to potential FLSA Collective Members,

---

[4] *Id.* at PageID # 4–6.
[5] *Id.*
[6] *Id.*
[7] Doc. No. 5, at PageID # 30–31.
[8] *Id.*
[9] *Id.* at PageID # 35–37.
[10] Doc. No. 10.
[11] Doc. No. 11.

pending a due diligence exchange of relevant payroll and time records so that the Parties could thoroughly engage in settlement communications.[12]

As noted in the Joint Motion for Preliminary Approval, in advance of making her demand, Named Plaintiff obtained a damages analysis from her expert who analyzed the time and payroll records of Named Plaintiff and all 120 putative Federal Rule of Civil Procedure 23 class members.[13] On November 29, 2021, Named Plaintiff served Defendant with her demand.[14]  Defendant sent its response to Named Plaintiff's demand on December 7, 2021.  Over the course of the following months, the Parties discussed the strengths and weaknesses of their positions as well as alleged damages and traded counterdemands and counteroffers.  On February 14, 2022, the Parties reached an agreement on the terms of a resolution of this matter.[15]

## II.  Terms of the Settlement Agreement

The parties reached a settlement upon stated terms and conditions, which are set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), that resolves all wage and hour claims that were or could have been asserted in the lawsuit (the "Settlement").[16]  Based on their extensive investigation, Plaintiff's counsel ("Class Counsel") is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class in light of the risk of significant delay, costs, and uncertainty associated with litigation, including Defendant's defense(s).[17]  In addition, the Parties represent in the fully executed release agreement that the Settlement is fair, reasonable, adequate, and in the best interest of the Named Plaintiff, the Opt-In Plaintiffs, and the Rule 23 class members in light of all known facts and circumstances,

---

[12] Doc. No. 12.

[13] Declaration of Matthew J.P.  Coffman (hereinafter "Coffman Decl."), Doc. No. 14-2, ¶ 15; Declaration of Daniel I. Bryant (hereinafter "Bryant Decl."), Doc. No. 14-3, ¶ 11.

[14] *Id*.

[15] *Id*.; *see also* Settlement Agreement, Doc. No. 14-1, at PageID # 117.

[16] Doc. No. 14-1, ¶ 13.

[17] Coffman Decl., Doc. No. 14-2, ¶¶ 17–21; Bryant Decl., Doc. No. 14-3, ¶¶ 15–19, 23–28.

including the risk of significant delay, the risk of loss or limited recovery, and the defense(s) asserted by Defendant.[18]

The Settlement Agreement provides that Defendant will pay a total of $96,377.58 ("Total Settlement Amount") to resolve this lawsuit.[19]  The parties agree that a settlement class should be certified as a Federal Rule of Civil Procedure 23 class, defined as follows:

> All persons who since June 17, 2019 until July 11, 2021 ("Calculation Period") when Defendant implemented a change in pay practice: (1) were employed by defendant in an hourly, non-exempt role; (2) worked over 40 hours in any workweek during the Calculation Period; and (3) were included in the data provided by Defendant (the "Class Members").[20]

The Total Settlement Amount will provide the Class Members with their calculated damages resulting from Named Plaintiff's claims based on the number of workweeks wherein they worked over 40 hours during the applicable Calculation Period in the following manner.[21]

Under the first option, any individual who timely returned a consent form ("Consent Form") and did not opt out of the lawsuit will receive one hundred percent (100%) of their alleged damages as calculated by Defendant and Class Counsel's analyst, an amount equal to their alleged overtime damages, a second amount equal to the same, and an additional payment of $200 as liquidated damages under the OPPA.[22]  A total of fifty-eight (58) Class Members timely returned their Consent Forms.[23]  I note that receiving all of their alleged damages plus an additional $200 is an exceptional result for the Class.

Under the second option, any individual who does not timely return a Consent Form will still receive 100% of their alleged unpaid overtime damages and $200 as liquidated damages under

---

[18] Doc. No. 14-1, ¶ 15.
[19] *Id*., ¶ 2.
[20] *Id*.,; Coffman Decl., Doc. No. 14-2, ¶ 15; Bryant Decl., Doc. No. 14-3, ¶ 13.
[21] Doc. No. 14-1, ¶ 2b; Coffman Decl., Doc. No. 14-2, ¶ 28; Bryant Decl., Doc. No. 14-3, ¶ 26.
[22] Doc. No. 14-1, ¶ 2b; Coffman Decl., Doc. No. 14-2, ¶ 28; Bryant Decl., Doc. No. 14-3, ¶ 26.
[23] Doc. No. 16, at PageID # 156; Declaration of Settlement Administrator, Doc. No. 16-1, ¶ 15.

the OPPA.[24]  To receive this money, the Class Members do not need to take any action other than to cash a check that will be mailed to them.

The Total Settlement Amount also provides for the following distributions: a modest service award in the amount of $5,000 to Named Plaintiff, attorneys' fees in the negotiated lodestar amount of $37,500 to Class Counsel, and costs and expenses associated with prosecuting this matter in the amount of $1,952.00.[25]  Defendant has also agreed to pay the costs associated with administering the Settlement separate and apart from the payment for attorneys' fees and costs.[26]

In exchange for their individual settlement payments, Named Plaintiff, Opt-In Plaintiffs, and the Class Members will release their wage and hour claims asserted in this lawsuit and be mailed their calculated alleged damages from the Total Settlement Amount by Analytics Consulting, LLC ("Analytics").[27]

## III.    Relevant Procedural Background Following Preliminary Approval

On March 24, 2022, I entered an Order granting provisional certification of the Rule 23 class, granting preliminary approval of the Settlement and authorizing notice to the provisionally certified class members.[28]  Thus, I preliminarily (1) approved of the Settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Rule 23(e); (2) granted certification pursuant to Rule 23(a) and (b)(3) of a settlement class consisting of the Class Members; (3) appointed Attorneys Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as Class Counsel pursuant to Rule 23(g); (4) appointed Rhonda Gresky as class representative; (5) approved Analytics as the Settlement Administrator; and (6) approved of the settlement procedure and

---

[24] Doc. No. 14-1, ¶ 2b; Coffman Decl., Doc. No. 14-2, ¶ 28; Bryant Decl., Doc. No. 14-3, ¶ 26.
[25] Doc. No. 14-1, ¶ 4.
[26] Id.
[27] Id., ¶¶ 10, 13.
[28] Doc. No. 15 ("Preliminary Approval Order").

timeline as set forth in the Preliminary Approval Order.[29]

On April 21, 2022, Analytics ("Settlement Administrator" or "Claims Administrator") commenced the issuance of notice in accordance with the terms of the Settlement and my Order preliminarily approving the Settlement ("Notice").[30]  The Court-approved Notice was sent to approximately 120 members of the provisionally certified class by first-class U.S.  mail.[31]  Under the Court-approved Notice, the opt-out forms and written objections to the Settlement had to be received or postmarked on or before August 14, 2022, which is ten (10) days prior to the fairness hearing on August 24, 2022.[32]

In addition, the deadline to return an opt-in form to receive additional compensation, as explained in the Notice, was May 9, 2022.[33]  Eight (8) Notices were returned to Analytics as undeliverable, so Analytics conducted a skip trace in an attempt to ascertain valid addresses for the affected Class Members.[34]  As a result of those efforts, four (4) new addresses were identified, and Analytics re-mailed the Notice to each of the new addresses.[35]  In other words, 116 out of 120 provisionally certified Class Members received Notice, which is equivalent to 96.7%.[36]

Therefore, as more fully explained below, I find that the Parties' Settlement is fair, reasonable, and more than adequate in all respects.

## IV.  <u>Analysis</u>

### A.  **Standard to Approve an FLSA and a Class Action Settlement**

Courts use a three-step procedure for approving class settlements.  *Bailey v.  Verso Corp.*, 337 F.R.D.  500, 505 (S.D.  Ohio 2021).  Settlement approval consists of three steps: (1) the court must

---

[29] *Id.*
[30] Doc. No. 16-1, ¶¶ 10–12.
[31] *Id.*
[32] *Id.*, ¶¶ 13–14; *see* Doc. No. 15, ¶ 8.
[33] *Id.*, ¶ 15.
[34] *Id.*, ¶¶ 10–14.
[35] *Id.*
[36] *Id.*

preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) after holding a hearing, the court must give its final approval of the settlement. *Id.*

### B. The Notice was Successful

The Parties retained a Claims Administrator to distribute the Notice to the provisionally-certified Rule 23 class members by U.S. mail after the mailing addresses were processed and updated utilizing the National Change of Address Database maintained by the U.S. Postal Service. This process constitutes an appropriate notice under Rule 23 and meets the FLSA's remedial goals. *See Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *4 (N.D. Ohio Sept. 13, 2021); *see also Satterly v. Airstream, Inc.*, No. 3:19-cv-107, 2020 WL 6536342, at *5, *13–14 (S.D. Ohio Sept. 25, 2020) (stating that the sending of notice to the last known addresses by first-class mail to the putative class members "provided Class Members with an appropriate notice under Rule 23 and met the FLSA's remedial goals"). Indeed, even just one dissemination of notice and mailing to a class member's address may constitute "the best notice practicable under the circumstances," satisfying "the notice requirements of Rule 23" and "the due-process requirement as well." *Harsh*, 2021 WL 4145720, at *4 (quoting *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014)) (internal quotation marks omitted). Here, Notice was distributed to 120 provisionally certified Class Members. After the Claims Administrator conducted a skip-tracing to re-mail the Notice to updated addresses for four (4) out of the eight (8) Class Members whose Notices were initially returned without a forwarding address, there was a remaining undeliverable rate of 3.3%. This rate is an excellent result and further supports a finding that notice was adequate in this case. *See id.*

### C.   The Factors Support Approval of the Settlement

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Id.* at *3 (quoting *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013)) (internal quotation marks omitted).  A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *Id.* (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors.  *Id.* at *4; *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)).  As set forth below, the Settlement meets the standard for final settlement approval as to each factor.

#### 1.   The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary.  *Harsh*, 2021 WL 4145720, at *4 (citing *Wright*, 2018 WL 3966253, at *3).  The Parties' respective counsel each have extensive experience with complex litigation including litigating class actions, FLSA actions, and other wage and hour claims.  The Settlement was achieved after months of analysis and considerable arms-length good-faith negotiations between the Parties.  The evidence reflects that the Settlement is the product of arms-length negotiations conducted by experienced counsel on both sides.  As such, nothing suggests that the Settlement is the result of fraud or collusion.  This factor weighs in favor of approval.

8

2.     The Complexity, Expense, and Likely Duration of Continued Litigation

From the outset, I note that wage and hour class and collective actions, such as this one, are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.  *Harsh*, 2021 WL 4145720, at \*5; *Satterly*, 2020 WL 6536342, at \*5.  This case was no exception.

While it is undisputed that Defendant pays its hourly employees a production bonus, Defendant maintains that its policy was conducted in good faith.  In addition, the Parties disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies.  This bona fide dispute is central to the question of whether Defendant is liable for potential overtime violations under federal and applicable state law.  If forced to litigate this case further, the Parties would certainly engage in additional complex, costly, and protracted discovery—including the further production and review of electronic and paper documents and one or more depositions—and motion practice.  As such, the lawsuit still involved complex issues of fact, and this factor weighs in favor of approval of the Settlement.  *Harsh*, 2021 WL 4145720, at \*5; *Wright*, 2018 WL 3966253, at \*3–4.

3.     The Amount of Discovery Engaged in by the Parties

To confirm that plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the court must consider the amount of discovery engaged in by the parties.  *Harsh*, 2021 WL 4145720, at \*5 (quoting *Wright*, 2018 WL 3966253, at \*4).  "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id.*  at \*4 (internal citations omitted).  In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court

have adequate information in order to evaluate the relative positions of the parties." *Id.*

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement.  Defendant produced payroll and time punch records for all Class Members, which have been analyzed by Defendant, Class Counsel, and Class Counsel's expert.  Both Parties used such data to construct damages models.  Using those models, the Parties engaged in negotiations and came to the agreed Settlement.[37]  Therefore, I find that the Parties were sufficiently informed to negotiate a fair, reasonable, and adequate settlement.

### 4.    The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Harsh*, 2021 WL 4145720, at *5; *Wright*, 2018 WL 3966253, at *4 (further citation omitted); *see Mitchell v. Independent Home Care*, No. 2:17-CV-717, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019).

Counsel for both sides believe in the merits of their respective positions and have represented their clients' interests throughout the litigation but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result.  Absent settlement, the Parties would have engaged in lengthy discovery and other motion practice.  Further, even if Named Plaintiff prevailed on the merits, any recovery could be significantly curtailed if a jury concluded that Defendant acted in good faith and Named Plaintiff failed to establish a willful violation of the law.[38] Moreover, an appeal could follow.[39]

On the other hand, Defendant faces the prospect of class-wide liability to approximately 120 current and former employees as well as liquidated damages and attorneys' fees following lengthy

---

[37] Coffman Decl., Doc. No. 14-2, ¶¶ 10–11; Bryant Decl., Doc. No. 14-3, ¶¶ 10–11.
[38] Coffman Decl., Doc. No. 14-2, ¶¶ 24–25; Bryant Decl., Doc. No. 14-3, ¶¶ 24–27.
[39] *Id.*

and expensive litigation. By agreeing to the Settlement, these risks are eliminated, and participating Class Members are guaranteed to receive a significant recovery now rather than possibly receiving a recovery years from now (or perhaps never or less than the amount agreed to now). *See Harsh*, 2021 WL 4145720, at *6; *Satterly*, 2020 WL 6536342, at *6.

Therefore, I find that these considerations all weigh in favor of approval.

### 5.  The Opinions of Class Counsel and the Class Representative

The recommendation of Class Counsel, skilled in collective and class actions, is that the Court should approve the Settlement and defer to Class Counsel's judgment. *Satterly*, 2020 WL 6536342, at *6; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").

In this case, Named Plaintiff approves of the Settlement.[40] In addition, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this litigation.[41] As I have previously observed with Class Counsel, these attorneys are each experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement.[42] Therefore, I find that this factor weighs in favor of approving the Settlement.

### 6.  The Reaction of Absent Class Members

The court must also consider the reaction of the absent class members. *Wright*, 2018 WL 3966253, at *5 (internal citations omitted). As indicated above, the Class Members' reactions support approval. Only 1 out of the 116 Class Members who received the Notice requested exclusion from the Settlement, and no Class Members objected to the Settlement. An inclusion rate

---

[40] Doc. No. 14-1, at PageID # 117.
[41] Coffman Decl., Doc. No. 14-2, ¶¶ 15–28; Bryant Decl., Doc. No. 14-3, ¶¶ 15–27.
[42] *Id*.

of over 99% is exceptional.

       7.    <u>The Public Interest</u>

The public interest favors the settlement of class action litigation.  *Wright*, 2018 WL 3966253, at *5.  This finding is especially true in cases involving wage and hour claims, which, by their very nature, inherently implicate the public interest.  *Harsh*, 2021 WL 4145720, at *7.  The Settlement provides significant relief to the Class Members, avoids further litigation in a complex case, and frees the Court of expending further judicial resources.  Accordingly, I find that this factor weighs in favor of approval.

       8.    <u>Overall Settlement Terms</u>

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable.  *Id.* at *7.  By each Class Member receiving their calculated damages, no lengthy analysis is necessary because this result is equitable.  The fairness of this Settlement is particularly true here, where, at best, Class Member who timely returned a Consent Form will receive the unpaid overtime damages, double damages, and $200 (i.e., Option 1).  At worst, Class Members who do nothing will receive their unpaid overtime damages and $200 (i.e., Option 2).

Thus, I find that under either option, the Settlement is equitable.

       (a)    *The Individual Payments Are Reasonable and Adequate.*

With respect to the settlement payments to the Class Members, I find the individual payments are reasonable.  I have previously held that the recovery of 42% of the maximum amount of alleged overtime damages is an excellent result because it represented "substantial relief" to the impacted individuals.  *Harsh*, 2021 WL 4145720, at *3–9.

As outlined above, under either option, the Class Member's payment is substantial, as they will receive 100% of the alleged maximum overtime damages.  To receive this money, Class

Members do not need to take any action other than to cash a check that will be mailed to them. Therefore, the Settlement and individual settlement payments represent a reasonable and an adequate resolution of the Class Members' overtime claims.

(b)     *Representative Plaintiff's Service Award Is Reasonable.*

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Satterly*, 2020 WL 6536342, at *8 (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).  Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253, at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)) (internal quotation marks and citations omitted).

In the present case, the Parties agreed to a service award of $5,000 for Named Plaintiff because she contributed significant time, effort, and detailed factual information throughout the investigation of the claims up through and including when the Parties reached a resolution.[43]  She also agreed to put her name on the line as a named plaintiff against her then-current employer.[44] Further, the proposed service award set forth in the Settlement Agreement is within the range awarded in wage and hour actions from federal jurisprudence cited by the parties.  *See, e.g., Satterly*, 2020 WL 6536342, at *8–9 (approving service awards between $10,000 and $15,000 to the named plaintiffs); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (approving a $10,000 service award for each named plaintiff). I find that the service payment is reasonable and approve the amount sought.

---

[43] Coffman Decl., Doc. No. 14-2, ¶ 23; Bryant Decl., Doc. No. 14-3, ¶ 21.
[44] *Id.*

Therefore, given that all of the factors weigh in favor of approval, the I grant the Joint Motion for Final Approval.

**D.** **Plaintiff's Attorneys' Fees and Reimbursement of Costs Are Reasonable and Appropriate.**

1. Class Counsel Is Entitled to the Requested Fee.

"[W]hen awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Harsh*, 2021 WL 4145720, at *7; *Satterly*, 2020 WL 6536342, at *9; *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. *Harsh*, 2021 WL 4145720, at *7. Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In addition, the FLSA and the Ohio Constitution provide the right to reasonable attorneys' fees for a party who recovers unpaid wages. *Harsh*, 2021 WL 4145720, at *7 (citing 29 U.S.C. § 216(b) and Ohio Const., Art. II, Section 34a).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *Harsh*, 2021 WL 4145720, at *8; *Satterly*, 2020 WL 6536342, at *10 (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007)). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the lodestar approach. *Harsh*, 2021 WL 4145720, at *8. Second, whichever method is employed, the Court must consider six factors to assess the reasonableness of the fee. *Id.* (citing *Moulton v. U.S. SteelCorp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

In this case, the Parties are requesting that I apply the lodestar method and approve an attorneys' fees award of $37,500 because this case is not a typical common fund case. Rather, the Parties have separately agreed upon a negotiated amount for attorneys' fees under the lodestar

method.  Defendant does not object nor has any Class Member objected to this fee.  As detailed below, I find that Class Counsel's request is appropriate and approved as reasonable.

        2.      <u>The Court Adopts the Lodestar Method and Grants Class Counsel's Lodestar in All Respects.</u>

To calculate the lodestar, the starting point requires the court to first determine counsel's reasonable hourly rate(s) and the number of hours that counsel "reasonably expended" on the case. *Rembert*, 986 F.3d at 616 (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013)). The district court has some discretion regarding the rates and hours that are reasonable "but only when the court provides a clear and concise explanation of its reasons for the fee award." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007).  Multiplying reasonable rates times reasonable hours yields the lodestar.  *See Waldo*, 726 F.3d at 821.  There is no proportionality limit on recoverable attorneys' fees compared to the claims of the class members either.  *Rembert*, 986 F.3d at 617.

In arriving at the reasonable hourly rate, the court typically looks to the prevailing rate in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation.  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); *see Project Vote v. Blackwell*, No. 1:06-cv-1628, 2009 WL 917737, at *10–11 (N.D. Ohio Mar. 31, 2009) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984)).  "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.'" *Project Vote*, 2009 WL 917737, at *11 (internal quotation marks omitted).

Here, Class Counsel seek hourly rates for the attorneys that represent current market rates for individuals with their skills, experience, and reputation.  In particular, Attorney Matthew J.P. Coffman seeks approval of his hourly rate of $450 per hour and Attorney Daniel I.  Bryant seeks

approval of his hourly rate of $400.[45]  While Defendant does not oppose this request,[46] the requested respective hourly rates of $450 and $400 are both reasonable in light of Class Counsel's extensive experience representing employees in wage and hour matters, expertise, and skill.  *See, e.g., Harsh*, 2021 WL 4145720, at *6; *Fields v. KTH Parts Indus., Inc.*, No. 3:19-CV-8, 2022 WL 3223379, at *5 (S.D. Ohio Aug. 9, 2022); *Satterly*, 2020 WL 6536342, at *11; *McCullen v. Toledo Country Club*, No. 3:18-cv-276, Doc. No. 36 at PageID # 300 (N.D. Ohio Feb. 14, 2020).  Further, each hourly rate falls within the range of hourly rates awarded by federal courts within the State of Ohio.  *See, e.g., Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) (approving hourly rates upwards of $600 and $550 per hour in wage and hour matters); *Smith v. Loc. Cantina, LLC*, No. 2:20-CV-03064, 2022 WL 1183325, at *5 (S.D. Ohio Apr. 19, 2022) (same).

       3.      <u>Analysis of Factors Used by the Sixth Circuit to Evaluate an Award of Attorneys' Fees Supports Court Approval of the Requested Fee Recovery.</u>

In *Ramey v. Cincinnati Enquirer, Inc.*, the Sixth Circuit established six relevant factors in the analysis of determining reasonable attorneys' fees.  These factors either include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services of an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

508 F.2d 1188, 1196 (6th Cir. 1974).[47]  The degree of success obtained is the most critical in

---

[45] Doc. No. 14, at PageID # 101; Coffman Decl., Doc. No. 14-2, ¶¶ 35–38; Bryant Decl., Doc. No. 14-3, ¶¶ 33–39.
[46] Doc. No. 14-1, ¶ 4.
[47] Other factors courts have used include (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awars in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

determining the reasonableness of a fee award.  As discussed below, each of these factors weighs in favor of Plaintiffs' Counsel's fee.

> 4.  <u>The Value of the Benefit Rendered to the Plaintiffs Supports the Award of the Requested Attorneys' Fees.</u>

The Supreme Court of the United States has defined prevailing parties as parties that achieve "success on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.  The Supreme Court further explained that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

In this case, the Class Members had the option to receive 100% of their unpaid overtime compensation, an amount equal to the alleged unpaid overtime, and an additional $200 if they timely return the proposed Consent Form.  If the Class Members elected not to do anything, they would still receive their unpaid overtime and an additional $200.  Certainly, Named Plaintiff, Opt-In Plaintiffs, and the Class Members have benefited from Class Counsel's legal skill in obtaining such a successful result.  As a result, this factor favors approval of Named Plaintiff's request.

> 5.  <u>Society's Stake in Rewarding Attorneys Who Produce Such Benefits Also Supports the Award of the Requested Attorneys' Fees.</u>

The second factor, "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive for others," also supports Class Counsel's fee request.  Class actions such as this one "have a value to society more broadly, both as deterrents to unlawful behavior- particularly when the individual injuries are too small to justify the time and expense of litigation – and as private law enforcement regimes that free public sector resources." *Wright*, 2018 WL 3966253, at *7.  Indeed, "[w]ithout a class action, the individual plaintiffs would not have had a

strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases." *Id.*

As observed by the Sixth Circuit above, wage and hour cases, like this one, often involve a large number of workers with relatively small individual claims.  Although the claims can sometimes be individually small, the unpaid wages make a significant difference in the lives of employees.  Society has a strong interest in awarding attorneys who take on these cases and recover real benefits for exactly the type of employees whom the FLSA is designed to protect.  Were it not for the work of attorneys such as Class Counsel, the work of a number of employees would go unnoticed, uncompensated, or undervalued.  *See Rembert*, 986 F.3d at 616–17.  Application of the above principles to this case demonstrates that *Ramey*'s second factor as to "society's stake in awarding attorney's fees" favors approval of Class Counsel's requested fee recovery.

> 6.  The Fact that the Services Were Undertaken on a Contingent Fee Basis Also Supports the Award of the Requested Attorneys' Fees.

Despite having made investments of time and out-of-pocket expenses through-out this litigation, Plaintiff's Counsel have received no compensation for this case.[48]  They have faced a risk of nonpayment because they undertook this litigation on a contingent basis.[49]  *See Wright*, 2018 WL 3966253 at *6; *In re Cardinal Health*, 528 F. Supp. 2d at 766 ("Several courts consider the risk of non-recovery the most important factor in fee determination."); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.").

This factor weighs in favor of approving Class Counsel's requested fee recovery.  Here, Class Counsel has devoted at least 96.8 hours to this action and risked non-payment of $1,952.00 in expenses incurred, knowing that if their efforts are unsuccessful, they will recover nothing.  Given

---

[48] Coffman Decl., Doc. No. 14-2, ¶ 32; Bryant Decl., Doc. No. 14-3, ¶ 30.
[49] *Id.*

18

the risks of establishing liability and damages and the possibility of non-payment that has been present throughout this litigation, award of the requested fee is a fair result.

> 7. The Value of the Services of an Hourly Basis also Supports the Award of the Requested Attorneys' Fees.

The fourth *Ramey* factor also strongly favors Class Counsel's requested fee recovery. As outlined above, the efforts of Class Counsel resulted in the Class Members having the potential of receiving 100% of their unpaid overtime compensation, an amount equal to the alleged unpaid overtime, and an additional $200 if they timely return the proposed Consent Form. In light of the significant recovery, the amount of Class Counsel's fees and expenses is fair and reasonable and is approved. Moreover, Class Counsel's work does not end at final approval. *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *7 (S.D. Ohio May 17, 2021). Class Counsel frequently spend additional time, sometimes significant time, dealing with the Class Members' inquiries, administration issues, and other post-approval matters. *See id.*

As of the filing of their Joint Motion for Preliminary Approval and as part of settlement negotiations, Attorney Coffman has expended 29.3 hours at a rate of $450 per hour for a total of $13,185.00. Attorney Bryant expended the bulk of the total hours (67.5) at a rate of $400 per hour for a total of $27,000.00.[50] Despite Class Counsel's total lodestar at such time of $40,185.00, Class Counsel representing Named Plaintiff and the Class Members have capped their attorneys' fees at $37,500 even though more time has been expended through the Rule 23 approval process and will be expended administering the Settlement. In doing so, they have exercised billing judgment and took affirmative steps to avoid excessive, redundant, or duplicative hours, including reducing or excluding time, or both, to ensure that the billable hours were reasonable in this case.[51] Because Class Counsel is seeking to recover their lodestar, the fourth *Ramey* factor weighs heavily in favor of

---

[50] Coffman Decl., Doc. No. 14-2, ¶¶ 37–40; Bryant Decl., Doc. No. 14-3, ¶¶ 34–39.
[51] *Id.*

Class Counsel's fee request.

      8.  <u>The Complexity of the Litigation Also Supports the Award of the Requested Attorneys' Fees.</u>

As this Court has observed, wage and hour matters, including class and collective actions, are inherently complex. *Harsh*, 2021 WL 4145720, at *5; *accord Satterly*, 2020 WL 6536342, at *5; *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *Wright*, 2018 WL 3966253, at *3. Though the subject matter of the lawsuit was not unfamiliar to Class Counsel, payroll and time punch records were still required to be analyzed based on workweeks when Defendant's employees both worked overtime and received additional remuneration.

      9.  <u>The Professional Skill and Standing of Counsel.</u>

The final *Ramey* factor, "the skill and efficiency of the attorneys," also favors Class Counsel's requested fee recovery. *Wright*, 2018 WL 3966253, at *7. The skill and efficiency of these attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *See Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991) ("Finally, all counsel, Defense Counsel and Class Counsel alike, exercised the highest degree of skill and competence in this proceeding. It should be noted that the attorneys and their respective law firms enjoy the highest degree of respect in their communities. Furthermore, they have an outstanding reputation both locally and nationally."). Given that I have already outlined the professional skill and standing of counsel above, this factor weights in favor of Class Counsel.

I find Class Counsel's request for attorneys' fees using the lodestar method in the amount of $37,500 based on their respective hourly rates of $450 and $400 is reasonable and grant Class Counsel's fee request.

10. <u>Class Counsel Is Entitled to Reimbursement of Costs and Expenses.</u>

Class Counsel is also entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and obtaining settlement.  *Satterly*, 2020 WL 6536342, at *11.  When costs and expenses are incurred that are necessary to litigate and prosecute the lawsuit, they are reasonable.  *Wright*, 2018 WL 3966253, at *7.  Here, Class Counsel requests reimbursement of $1,952.00 in costs/expenses that have been incurred prosecuting this lawsuit.[52] This amount includes reasonable costs for commencement of the litigation, postage, investigatory costs, and expert fees for purposes of cross-referencing alleged unpaid overtime damages.[53]

I find these expenses to be reasonable and necessary in connection with litigating and resolving this action.  Defendant does not dispute that the costs are reasonable and reimbursable.  Therefore, I grant Class Counsel's request for expense reimbursement of $1,952.00.  I also grant the Parties' request that Defendant bear the costs of administering the settlement in the amount of $6,105.00 to be paid directly to Analytics separate and apart from the costs requested by Class Counsel.

**V.**     **Conclusion**

Based on the foregoing, the Parties' Joint Motion for Final Approval is granted.   (Doc. No. 16).   Accordingly, I find as follows:

1.     Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds, after a hearing and based on the parties' submissions, that the Settlement Agreement is fair, reasonable, and adequate.  In reaching this conclusion, the Court considered the record in its entirety and the arguments of counsel for the Parties.  In addition, the Court has considered a number of factors, including: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Class Members to the Settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of maintaining the class action through the trial; and (6) the reasonableness of monetary benefits to the Class Members;

---

[52] Doc. No. 14-1, ¶ 4; Coffman Decl., Doc. No. 14-2, ¶¶ 12, 37–39; Bryant Decl., Doc. No. 14-3, ¶¶ 14, 39–41.
[53] *Id.*

2.      The terms and provisions of the Settlement are the product of thorough, arms-length negotiations among experienced and competent counsel.  Approval of the Settlement will result in substantial savings of time, money, and effort to the Court and the Parties and will further the interests of justice;

3.      All Class Members are bound by this Judgment and the terms of the Settlement;

4.      Nothing in the Settlement Agreement, this Judgment, or the fact of the Settlement constitutes any admission by any of the Parties of any liability, wrongdoing, or violation of law; damages or lack thereof; or of the validity or invalidity of any claim or defense asserted in the Action;

5.      The Court has considered the submissions by the Parties and all other relevant factors, including the results achieved and the efforts of Class Counsel in prosecuting the claims on behalf of the Class Members.  Named Plaintiff participated in the action, acted to protect the Class Members, and assisted her counsel.  The efforts of Class Counsel have produced the Settlement entered into with good faith, providing a fair, reasonable, adequate, and certain result for the Class Members.  Class Counsel has made application for an award of $37,500 in attorneys' fees and $1,952.00 in expenses incurred in the prosecution of the action on behalf of itself and the Class Members.  The Court finds that the amounts requested for fees and expenses to be fair, reasonable, and adequate under the circumstances.  The Court hereby awards $39,452.00 as attorneys' fees and expenses to Class Counsel.  Analytics shall also be paid $6,105.00 for its services in administering this Settlement.  Further, Named Plaintiff is entitled to a fair, reasonable, and justified service award of $5,000 pursuant to the Settlement Agreement and to be paid from the Settlement fund;

6.      This case is dismissed with prejudice; and

7.      Without affecting the finality of this Judgment, the Court reserves jurisdiction over the enforcement of this Judgment and the Settlement Agreement and all matters ancillary thereto.

IT IS SO ORDERED.

                              s/ Jeffrey J. Helmick
                              JEFFREY J.  HELMICK
                              UNITED STATES DISTRICT JUDGE